## NORTH SHORE BOOM AND DRIVING COMPANY v. NICOMEN BOOM COMPANY.

ERROR TO THE SUPREME COURT OF THE STATE OF WASHINGTON.

No. 107. Argued January 29, February 1, 1909.—Decided February 23, 1909.

A State, in the absence of any statute by Congress, has plenary power in regard to navigable streams wholly within its boundaries; and obstructions in such streams, in the absence of statute, constitute no offense against the United States, and whether obstructions are unlawful under state law is not a Federal question. *Willamette Iron Bridge Co. v. Hatch,* 125 U. S. 1.

Where a Federal law is applicable requiring consent of the Federal Government there is concurrent or joint jurisdiction of the state and National governments over the erection of structures obstructing navigation of a navigable stream wholly within a State. *Cummings v. Chicago,* 188 U. S. 410; *Montgomery v. Portland,* 190 U. S. 89.

Section 10 of the River and Harbor Act of March 3, 1899, c. 425, 30 Stat. 1151, alters § 7 of the River and Harbor Act of September 19, 1890, c. 907, 26 Stat. 454, and prohibits obstructions in navigable waters of the United States not affirmatively authorized by Congress, and whether the State has assented to such obstructions remains with the State alone and is not a Federal question reviewable by this court under § 709, Rev. Stat.

Writ of error to review 40 Washington, 315, dismissed.

THE Nicomen Boom Company, hereinafter called the plaintiff, commenced an action against the North Shore Boom and Driving Company, hereinafter called the defendant, in the Superior Court of the State of Washington, Pacific County, to enjoin the defendant from building a boom in the North River, (a river wholly within the boundary of the State of Washington), within the locality designated in the plaintiff's plat and survey for its boom.

The action was founded upon the allegations that the plaintiff was the first to file its plat, and that it commenced to build its boom under the statutes of the State of Washington, and

that the defendant was threatening to build its boom within the locality marked out and designated by the plaintiff in its plat or survey filed with the Secretary of State, although its boom had not actually been completed the whole distance indicated in such plat or survey.

The defendant denied the various allegations of the plaintiff and the parties went to trial, which resulted in a judgment for the defendant, dismissing the plaintiff's complaint. The plaintiff appealed to the Supreme Court of the State, where the judgment was reversed and the cause remanded to the Superior Court, with directions to enter judgment enjoining the defendant from building the boom within the location marked on the plat or survey for the plaintiff's boom. See the opinion of the state court, 40 Washington, 315, showing plainly and in full the grounds of the decision.

The defendant has sued out a writ of error from this court and brings the judgment here for review.

Mr. *Charles E. Miller* and *Mr. John M. Thurston*, with whom *Mr. W. H. Abel*, *Mr. James B. Howe* and *Mr. Samuel H. Piles* were on the brief, for plaintiff in error:

Both boom companies were incorporated long after the passage of the act of Congress of September 19, 1890, and both recognized the authority of Congress by securing permission from the Secretary of War to erect their respective boom structures. If either company had attempted to erect its boom without the Federal assent, it would have been very promptly stopped and ejected from the river by the Secretary of War. Hence, the authority of any person to thus occupy this stream is wholly a Federal question, whether the right questioned is under the Federal or state statutes. *United States* v. *Bellingham Bay Boom Co.*, 176 U. S. 218; *Cummings* v. *Chicago*, 188 U. S. 410.

The erection of a structure in a navigable river, within the limits of a State, depends upon the concurrent or joint assent of both the National Government and the state government.

The Secretary of War, acting under the authority conferred by Congress, may assent to the erection by private parties of such a structure. Without such assent the structure cannot be erected by them. *Cummings* v. *Chicago*, 188 U. S. 410; *Montgomery* v. *Portland*, 190 U. S. 89.

As the authority over the navigable waters of the United States is paramount in Congress and any voice in their control by the States is only by the grace of Congress, which may be withdrawn at any time, as to what constitutes the assent of a State, to be concurrent with National assent, is, *ipso facto*, a Federal question.

The Washington Supreme Court held that the filing of a boom plat was analogous to the filing of a plat for right of way by a railroad corporation which would hold the location until actual abandonment and that therefore the defendant in error had the state assent and that plaintiff in error did not have such assent. This was the sole question in the case and from its very nature could only be a Federal question. *Blythe* v. *Hinckley*, 180 U. S. 333; *Am. Sugar R. Co.* v. *Louisiana*, 179 U. S. 89; *Douglass* v. *Wallace*, 161 U. S. 346.

It must appear from the record that the question was necessarily involved in the decision; and that the state court could not have given the judgment or decree, which it has passed without deciding it. *Armstrong* v. *Athens Co.*, 16 Pet. 281.

This case is cited in many cases, notably the following: *Moore* v. *Mississippi*, 21 Wall. 638; *Murray* v. *Charleston*, 96 U. S. 442; *Crossley* v. *New Orleans*, 108 U. S. 105; *Weatherby* v. *Bowie*, 131 U. S. ccxv; *Kaukauna Water Power Co.* v. *Green Bay & M. C. Co.*, 142 U. S. 69; *Gulf Etc. R. R.* v. *Hewes*, 183 U. S. 66; *Anderson* v. *Carkins*, 135 U. S. 483; *Powell* v. *Brunswick Co.*, 150 U. S. 433.

It is not necessary that the treaty or act of Congress on which the Federal right is based should have been pleaded specially or spread upon the record. It is sufficient if the record shows that it must have been construed. *McCullough* v. *Virginia*, 172 U. S. 118, and see also *Wedding* v. *Meyler*,

192 U. S. 573; *Covington* v. *Sanford,* 164 U. S. 595; *Mitchell* v. *Clark,* 110 U. S. 645; *Boyd* v. *Nebraska,* 143 U. S. 180; *Des Moines* v. *Iowa H. Co.,* 123 U. S. 555; *Erie R. Co.* v. *Purdy,* 185 U. S. 148; *Snell* v. *Chicago,* 152 U. S. 191; *Muter* v. *Montgomery,* 156 U. S. 385; *Walter A. Wood Co.* v. *Skinner,* 139 U. S. 295; *Cook Co.* v. *Calumet Dock Co.,* 138 U. S. 365; *C., B. & Q. R.* v. *Chicago,* 166 U. S. 228.

*Mr. James G. Wilson,* with whom *Mr. W. W. Cotton* was on the brief, for defendant in error:

A writ of error from the Supreme Court of the United States to the Supreme Court of a State, can be sustained only when the decision is against the right specially set up or claimed under the Constitution and laws of the United States, and if the decision of the state court rests upon independent grounds of law, sufficient to sustain it, but not involving a Federal question, the Supreme Court of the United States has no jurisdiction and will dismiss the writ of error, and this, even in a case· where a Federal question is also decided. Taylor on Jur. and Pro. of U. S. Supreme Court, §§ 238–240; *Rutland R. R. Co.* v. *Central of Vermont R. R. Co.,* 159 U. S. 638; *Eustis* v. *Bolles,* 150 U. S. 366; *Cal. Powder Co.* v. *Davis,* 151 U. S. 393; *Giles* v. *Teasley,* 193 U. S. 160; *Sawyer* v. *Piper,* 189 U. S. 156; *Harrison* v. *Morton,* 171 U. S. 46; *Allen* v. *Arguimbau,* 198 U. S. 154; *Chapin* v. *Fye,* 179 U. S. 128; *Corkran Oil Co.* v. *Arnaudet,* 199 U. S. 193; *Fullerton* v. *Texas,* 196 U. S. 192; *Capital Bank* v. *Cadiz Bank,* 172 U. S. 425; *Dower* v. *Richards,* 151 U. S. 666; *Egan* v. *Hart,* 165 U. S. 188; *McMillan* v. *Ferrum Min. Co.,* 197 U. S. 343.

The mere fact that the controversy arose out of a location in a navigable water in the United States, or under a statute of Congress, would not necessarily raise a Federal question within § 709 of the Revised Statutes. *Egan* v. *Hart,* 165 U. S. 188; *McMillan* v. *Ferrum Min. Co.,* 197 U. S. 347; *Telluride P. T. Co.* v. *Rio Grande W. R. Co.,* 175 U. S. 643.

The effect of § 10 of the River and Harbor Act is to make

the erection of a structure in a navigable river within the limits of a State dependent upon the concurrent or joint assent of both the National Government and the state government. The question of whether or not the assent of the National Government had been acquired might raise a Federal question and authorize a writ of error, but the question of whether or not the assent of the State had been obtained, is purely a matter of local and state law and does not involve a Federal question. *Cummings* v. *Chicago,* 188 U. S. 431; *Montgomery* v. *Portland,* 190 U. S. 103.

MR. JUSTICE PECKHAM, after making the foregoing statement, delivered the opinion of the court.

This is a contest between two boom companies incorporated under the laws of the State of Washington, authorizing the organization of corporations of this kind.

In April, 1900, the plaintiff, after its organization, filed in the office of the Secretary of State of Washington its plat or survey, showing so much of the shore lines and waters of the North River and lands contiguous thereto as it proposed to appropriate under the laws of the State. Before beginning its boom it submitted to the Secretary of War of the United States the plan of its proposed improvement and a plat of the territory to be occupied thereby, and was granted permission by the War Department to construct a boom within the limits of the river covered by the plat. The plaintiff proceeded to erect its boom along the left side of the river, but stopped short of the upper end of the territory covered by its plat of location. The boom was substantially constructed at a cost of about $16,000, and has been operated from the time of its erection as originally constructed; and plaintiff has always expected to extend the boom within the limits of the plat of location as the demands of business might require. Some days before the commencement of the actual work of extending the plaintiff's boom the defendant commenced to construct its boom within the limits of the original plat of the plaintiff.

The defendant was organized in 1903 and filed its plat and survey in the office of the Secretary of State of the State of Washington, and it alleges that before commencing to construct its boom it secured from the War Department of the United States permission to construct the boom within its location. The boom of the defendant, if constructed according to its plans, would cause logs coming down the river intended to reach the plaintiff's boom to enter the main boom of the defendant. The booms, as proposed by the plaintiff and defendant, cannot both be constructed. If the boom of the plaintiff should be extended up the river within the limits of its plat and survey, the passage between its line of dolphins and the dolphins of the defendant on the other side of the stream would be so narrow as to block navigation. Moreover, it would be impracticable to operate both booms under such circumstances. If the defendant is permitted to operate its boom as intended, the boom of the plaintiff will receive only such timber from up the river as may escape from the boom of the defendant and such as may be transmitted through that boom to the plaintiff. These facts are practically undisputed and are found in the record and findings of the court.

The Federal Government has taken no part in the dispute between the two corporations. The laws of the State provide for proceedings to build booms and the defendant contends that 'it complied with those statutes, and had also obtained from the chief clerk of the War Department a written statement, dated March 23, 1903, stating that the War Department would not interpose any objection to the construction and maintenance of the boom in the manner proposed by the defendant, so long as it did not unreasonably interfere with navigation.

Several laws have been passed by Congress, contained in the River and Harbor Appropriation Acts, prohibiting obstructions in the waters of the United States, and also providing for getting the consent of the Government, through the Secretary of War, to the building of booms, bridges, etc. See

act of 1890, 26 Stat. 454, chapter 907, §§ 7, 10. Also act of March 3, 1899, 30 Stat. 1151, chapter 425, § 10.

The state court did not find it necessary to decide the question whether the defendant had complied with the Federal statute in regard to the building of its boom, but held that it had not complied with the statutes of the State of Washington in regard to the building of such proposed boom, and it therefore had no right to build it, and it enjoined the defendant from so doing, and directed judgment to be entered to that effect.

Before discussing the merits of the case the defendant in error made a motion to dismiss the writ of error for the want of jurisdiction, there being, as it asserts, no Federal question reviewable under § 709 of the Revised Statutes.

The river in question is a navigable stream, entirely within the State of Washington, and, in the absence of any statute by Congress, a State has plenary power in regard to such waters. Obstructions in those waters may be offenses against the laws of the State, but constitute no offense against the United States in the absence of a statute. *Willamette Iron Bridge Company* v. *Hatch*, 125 U. S. 1. The question whether the acts complained of, such as obstructions, etc., in the river, are lawful or unlawful under the state law, is, as was said in the above cited case (page 9), a state question, not a Federal one. Where there is a Federal law which it is claimed also applies to the subject and requires the consent of the Federal Government, then there is a concurrent or joint jurisdiction of the state and National governments over the erection of a structure which obstructs navigation. *Cummings* v. *Chicago*, 188 U. S. 410; *Montgomery* v. *Portland*, 190 U. S. 89.

It is contended, however, on the part of the counsel for the defendant that whether the assent of the State has been given to the erection of the structure is in and of itself a Federal question, and he cites *United States* v. *Bellingham Bay Boom Co.*, 176 U. S. 211, 218, as authority for the proposition. That case was commenced in the Circuit Court of the United States for the State of Washington, Northern Division, and was

brought by the United States under the direction of the Attorney General, pursuant to the provisions of § 10 of the River and Harbor Bill of 1890, 26 Stat. *supra*. It was brought to enforce the right of the Government to prevent the erection of a structure that obstructed the navigation of the river. It was held in that case that the words in the tenth section, "not affirmatively authorized by law," referred to the state as well as to the Federal law, and that the question then arose as to whether the structure was permitted by that [state] law, and as the law of Congress provided that it might be permitted if affirmatively authorized by a state law, the question whether it was so authorized became in effect a question whether the Federal law did or did not permit it. If it were authorized by the state law, then the Federal law provided that it might continue; and whether it was or not, became a Federal question.

This is not such a case, and it is not brought by the Government under the section above mentioned, but the suit concerns private parties only, and the statute does not, in the section applicable, refer to any state law as in the case cited. Section 7, River and Harbor Act of 1890, 26 Stat. 454, chapter 907. And § 10 of chapter 425 of the Laws of 1899, 30 Stat. 1551, *supra*, alters the tenth section of the statute of 1890 by providing: "That the creation of any obstruction not affirmatively authorized by Congress to the navigable capacity of any of the waters of the United States is hereby prohibited." It leaves out the words "not affirmatively authorized by law," and substitutes "not affirmatively authorized by Congress." There is, therefore, no reference to state action or state law. Obstruction not affirmatively authorized by Congress is prohibited, but the case of the state assent remains with the State for its sole adjudication.

The construction of the boom of defendant in this case, the state court has decided, was not authorized by the State. Whether it was or not, is not a Federal question. The writ of error is therefore

*Dismissed.*