QUESTION:
Are the United States Army Corps of Engineers and local governments required to comply with the provisions of Ch. 161, F. S., with respect to beach restoration projects?
SUMMARY:
The State of Florida, through the Board of Trustees of the Internal Improvement Trust Fund and the Department of Natural Resources, has regulatory control over beach restoration projects, whether carried out by the United States Army Corps of Engineers or by local governments.
Your question is answered in the affirmative. The State of Florida is the owner of all lands under tidal waters seaward of the mean high water line not otherwise alienated. State ex rel. Ellis v. Gerbing, 47 So. 353 (Fla. 1908); Trustees of Internal Improvement Fund v. Claughton, 86 So.2d 775 (Fla. 1956). Ownership and control are in the state, subject to the paramount right of Congress to regulate for navigational purposes. Illinois Central Railroad v. Illinois, 146 U.S. 387 (1892). Alteration or construction in these waters is controlled concurrently and requires the joint assent of the federal and state governments. Cummings v. Chicago,188 U.S. 410 (1903); Montgomery v. Portland, 190 U.S. 89 (1903); North Shore Boom Co. v. Nicomen Boom Co., 212 U.S. 406 (1909).
The State of Florida owns, generally, from the mean high water line, three geographical miles into the Atlantic Ocean and three leagues seaward into the Gulf of Mexico. United States v. Louisiana, Texas, Mississippi, Alabama and Florida, 364 U.S. 502
(1960).
The title and ownership of these lands was specifically recognized as being in the states by the Submerged Lands Act of 1953, 43 U.S.C. ss. 1301-1315. The rights of the United States with respect to navigation, flood control, and production of power are reserved to the United States. [See] 43 U.S.C. § 1311(e); United States v. Rands, 389 U.S. 121 (1967); Zabel v. Tabb, 430 F.2d 199 (5th Cir. 1970), cert. den., 91 S.Ct. 873 (1971).
Since a beach renourishment project would necessarily alter state property rights by moving the mean high water line, it is my opinion that the corps of engineers could not engage in such a project without state concurrence. In my opinion, beach renourishment is not an area reserved by the Submerged Lands Act to the federal government. The federal government is authorized only to "assist" in the construction, but not the maintenance, of works for the restoration and protection of the shores of the United States, for the purposes of "preventing damage to the shores" and "promoting and encouraging the healthful recreation of the people." [See] 33 U.S.C. § 426e(a). The federal contribution is not to exceed one-half the cost of the restoration projects, unless the project is for publicly owned shore parks and conservation areas, in which case the federal participation in the cost may be not more than 70 percent, excluding land costs. [See]33 U.S.C. § 426e(b). Beach renourishment projects clearly require state assent.
Chapter 161, F.S., contains many applicable sections with respect to beach renourishment projects. Before a beach renourishment program can be undertaken, the Board of Trustees of the Internal Improvement Trust Fund must establish an "erosion control line." Section 161.161. This line is defined as the line marking the landward extent of sovereign ownership of the submerged bottoms and shores of the Atlantic Ocean, Gulf of Mexico, and the bays and tidal reaches thereof, on the date of the recording of the survey. Section 161.151. The line, then, is by definition the mean high water line as determined at the time of the survey. [The mean high water line is determined by intersecting the plane of mean high water with the shore. Borax Consolidated, Ltd., et al. v. Los Angeles, 296 U.S. 10, 12 (1935), reh. den., 296 U.S. 664; Miller v. Bay-to-Gulf, Inc., 193 So. 425, 427 (1940).]
The erosion control line is established under the provisions of s.161.161, F.S., requiring approval by the board of trustees to pursue the project, written consent of owners of a majority of the lineal feet of contiguous riparian property which either abuts the requested erosion control line, or would abut such line, if established at the line of mean high water, for the establishment of such a line, and public hearings.
Because beach restoration would necessarily change the mean high water line, but the ownership of land between the state and the riparian upland owner would remain divided by the erosion control line (s. 161.191, F.S.), a coastal construction setback line would also be required, either 50 feet landward of the erosion control line (s. 161.052, F.S.), or as determined on a county-by-county basis, pursuant to s. 161.053, F.S.
A permit from the Department of Natural Resources would also be required should the beach renourishment project require construction of structures of a solid or highly impermeable design, such as groins, jetties, breakwaters, and revetments. Section 161.041, F.S. Before a city or other local governmental body could institute a beach renourishment project, therefore, the trustees, pursuant to s. 161.161, F.S., must approve the project, and the Department of Natural Resources must exercise certain permitting or setback line authority. Sections 161.052, 161.053, and 161.041, F.S.
The federal government, as explained above, is authorized by law only to assist in beach renourishment projects. Since a requesting city or other governmental body would necessarily have to participate in funding a project, and could not proceed without state permission, beach renourishment projects could not proceed without state approval. In addition, of course, projects which affect navigable waters come under concurrent state and federal jurisdiction.